UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Charles Iryzarry</u>

   v.                                                     Civil No. 11-cv-202-PB

<u>Stephen Church, Superintendent,
Rockingham County Department of
Corrections, et al.</u>[1]

**REPORT AND RECOMMENDATION**

     Before the court is Charles Iryzarry's complaint (doc. no. 1) and addendum to the complaint (doc. no. 3).[2] Iryzarry is an inmate at the Rockingham County Department of Corrections ("RCDC"), who alleges that his federal constitutional and state law rights have been violated by RCDC employees. The matter is

---

[1] In addition to Church, Iryzarry has named the State of New Hampshire and the following Rockingham County Department of Corrections ("RCDC") officers as defendants to this action: Lt. Horne, first name unknown ("FNU"); Cpl. FNU Warden; Corrections Officer ("CO") FNU Anderson; Cpl. John Doe; and two John Doe COs.

[2] Irzyarry initially filed a complaint in this matter (doc. no. 1). Iryzarry later filed "discovery" exhibits which have been docketed as an addendum to the complaint (doc. no. 3). The court construes the complaint and addendum (doc. nos. 1 and 3), in the aggregate, to be the complaint in this matter for all purposes. Both the complaint and the addendum thereto were filed with attached documents. The documents will also be considered to be part of the complaint for all purposes. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

before the court for preliminary review to determine whether the complaint states any claim upon which relief might be granted. See 28 U.S.C. § 1915A(a); United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).

## Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff commences an action pro se, the magistrate judge conducts a preliminary review. The magistrate judge may issue a report and recommendation after the initial review, recommending that claims be dismissed if the court lacks subject matter jurisdiction, the defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious. See id. (citing 28 U.S.C. § 1915A & Fed. R. Civ. P. 12(b)(1)). In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003).

To determine if the complaint states any claim upon which relief could be granted, the court applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6).  The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Id.  The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible.  Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The "make-or-break standard" is that those allegations and

3

inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citation omitted). In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

**Discussion**

I. <u>Restrictive Conditions and Classification Claims</u>

Iryzarry complains that during his incarceration at the RCDC, he has spent much of his time in physical restraints, including handcuffs and shackles. Iryzarry asserts that he is

not always permitted to shower or exercise without the restraints.  Iryzarry states that he has been placed in shackles and handcuffs at the whim of CO Anderson, and that Cpl. Warden has also refused to lift the restraint restrictions.  Iryzarry has also spent much of his time at the RCDC in maximum security.  Iryzarry's maximum security classification limits his out-of-cell time to one hour per day.  In maximum security, Iryzarry is denied certain possessions, such as sheets and towels, cell-cleaning and hygiene supplies, certain items of clothing, and books.

On October 25, 2010, while Iryzarry was a pretrial detainee, he filed a request slip seeking relief from some of these conditions.  The following day, Cpl. Warden responded in writing to Iryzarry, authorizing him to have a pair of socks and a second blanket, advising him that he could have hygiene supplies and cleaning supplies during his out-of-cell time, and stating that Iryzarry's physical restraint restrictions would remain in place.

The complaint does not reveal the specific reason Iryzarry was placed in restrictive conditions as a pretrial detainee. Iryzarry asserts in his complaint that there is no reason for him to be subjected to these restrictions.  However, on October 25, 2010, Iryzarry sent a request slip apologizing for

unspecified behavior he had engaged in the previous day that was apparently at the root of the imposition of restrictions upon him and asked for the restrictions to be lifted.  Iryzarry stated in the apology that he "was having up and down moves due to [his] medication."  He received an answer from Cpl. Warden the following day stating that Iryzarry's current status would not be changed at that time due to his behavior on October 24, 2010.

On February 23, 2011, Iryzarry filed a request slip asking to have his status changed to remove the restrictions as he claims he did not commit any disciplinary infraction.  On February 28, 2011, Iryzarry received a response stating that Iryzarry was due to receive a status review, and that his status would be dictated by his behavior.  The written response Iryzarry received stated: "Your status is 'maximum' security 'single movement' because your subversive behavior dictates it.  This is not punitive status and you may receive library interest items (sic).  A period of compliant non confrontational (sic) behavior will be required for a status change."

The complaint does not specify whether Iryzarry was continuously held in maximum security between October 2010 and February 2011.  The complaint also does not state when, or if, the restrictions were lifted.  Aside from the mention of a

6

"status review" in the February 28 response to Iryzarry's request, there is no mention in the complaint of what process, if any, was involved in the decision to place and retain Iryzarry in restrictive conditions.

    A.    <u>Pretrial Detention</u>

To the extent that Iryzarry alleges that he was held in restrictive conditions of confinement that amount to punishment while he was a pretrial detainee, he attempts to assert a Fourteenth Amendment due process claim. Pretrial detainees have the right, under the Due Process Clause of the Fourteenth Amendment, not to be punished prior to conviction. <u>See</u> <u>Surprenant v. Rivas</u>, 424 F.3d 5, 14 (1st Cir. 2005). However, "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense . . . Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." <u>Bell v. Wolfish</u>, 441 U.S. 520, 537 (1979).

As plaintiff is a pretrial detainee, the court must therefore determine "whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of the word" and "whether the

disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Id. at 538. "If a restriction appears to be unrelated to a legitimate governmental objective, and is, for example, arbitrary or purposeless, then a court may infer that it is intended to be punishment." Lyons v. Powell, 838 F.2d 28, 29 (1st Cir. 1988); see Ford v. Clarke, 746 F. Supp. 2d 273, 289-90 (D. Mass. 2010) (detention of pretrial detainee in a disciplinary housing unit for purpose of punishment, rather than for legitimate governmental purpose, violated detainee's Fourteenth Amendment right).

> In assessing whether a specific restriction is reasonably related to security interests, . . . courts should heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters.

Block v. Rutherford, 468 U.S. 576, 584-85 (1984) (internal citations, quotations, and alterations omitted); see Bell, 441 U.S. at 547 (courts should accord prison officials "wide-ranging deference in the adoption and execution of policies and practices" necessary to maintain institutional security).

Here, Iryzarry's restrictions were placed upon him in direct response to aberrant behavior that Iryzarry himself acknowledged. Iryzarry has not asserted any facts to suggest that Warden or Horne had any motivation to punish him for his underlying offense prior to his conviction. Further, the complaint demonstrates that Iryzarry's institutional behavior is the cause of the restriction, and that Iryzarry's good behavior in the RCDC could cause his security status to be reduced. The court therefore recommends that the restrictive conditions claims against Warden and Horne be dismissed.

Iryzarry has stated in his complaint that CO Anderson places Iryzarry in handcuffs and shackles whenever Anderson feels like it. Iryzarry fails to allege any specific incident or any other facts that might support a claim that Anderson was placing him in restraints with the intent to punish him, particularly in light of the apparent restraint restrictions placed on Iryzarry by Warden and Horne. Iryzarry's supposition that Anderson just felt like handcuffing him is insufficient to state a claim that he was denied his due process rights, and the court recommends that this claim against Anderson be dismissed.

B.  Post-Conviction Classification

To the extent Iryzarry was in restrictive conditions of confinement after he was sentenced, the court applies a different analysis than that applied to restrictive conditions in pretrial detention.[3]  In general, an inmate has no constitutional right to any particular institutional classification, unless the condition "'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  See Wilkinson v. Austin, 545 U.S. 209, 222-23 (2005) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).  Further, "[t]he Constitution 'does not mandate comfortable prisons.'"  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981))).  Here, Iryzarry describes being held in restraints, with limited possessions and out-of-cell time.  While undoubtedly uncomfortable, the conditions to which Iryzarry was subject do not present an "atypical, significant hardship in relation to the ordinary incidents of prison life."  See Sandin, 515 U.S. at 484; see e.g., Waller v. Maples, No. 1:11CV00053 JLH-BD, 2011 WL

---

[3]Iryzarry was a pretrial detainee in October 2010.  He asserts in his complaint that he had a trial on January 10, 2011.  While Iryzarry may have been convicted and sentenced in February 2011, the court cannot make that determination definitively based on the information in the complaint.  The court will therefore consider Iryzarry's claims under the arguably more lenient Fourteenth Amendment standard.

3861370, *4 (Aug. 31, 2011) (punitive segregation for thirty days with no educational programming or ability to go to church and one hour out-of-cell-time per day spent in shackles and handcuffs, including for showers, was not atypical and significant hardship in prison context), adopted, 2011 WL 3861369, *1 (E.D. Ark. July 26, 2011). Accordingly, Iryzarry has not stated sufficient facts to establish a claim that he was subjected to unconstitutionally restrictive conditions of confinement while serving a sentence.

## II. Mental Health Care

Iryzarry states that he suffers from a number of mental illnesses, including anxiety, depression, bipolar disorder, and attention deficit hyperactivity disorder. Iryzarry states that when he arrived at the RCDC, he was not permitted to have one-on-one confidential therapy for the first thirty days of his incarceration. Instead, Iryzarry states that he talked to a doctor by video, and that when he was speaking to either the doctor or a mental health worker, the meetings were conducted in such a manner that either RCDC staff or other inmates could hear the conversation.

Iryzarry claims that on or around January 10, 2011, when he was going through a criminal trial, some member of the RCDC made

up a false report that caused Iryzarry's medication to be discontinued. Iryzarry claims that the false report was made with the purpose to cause him emotional distress during his criminal trial. Iryzarry has not named the staff member responsible for the false report or described the nature of the false information that was reported, or stated why or how it caused his medication to be discontinued.

A pretrial detainee's right to adequate medical or mental health care during his incarceration arises under the Fourteenth Amendment's Due Process Clause. See Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005) (explaining that parameters of pretrial detainees' prison condition claims arising under the Fourteenth Amendment are coextensive with the protection a convicted inmate receives under the Eighth Amendment). In order to state a constitutional claim for the denial of mental health care, or other medical care, an inmate must allege that defendants have committed "acts or omissions . . . sufficiently harmful to evidence deliberate indifference to serious medical needs." Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011) (internal quotations and citation omitted); see also Farmer, 511 U.S. at 834 (plaintiff's claim of constitutional violation must meet both objective and subjective criteria).

To the extent Iryzarry states that, within the first thirty days of his arrival at the RCDC, he was given some access to a mental health professional as well as to a doctor, and that he was subsequently provided with counseling and medication, he has failed to state any claim of deliberate indifference to his serious mental health needs.  Iryzarry received both counseling and medication, albeit not instantly upon his arrival at the jail, and not always with the level of privacy he preferred.  Iryzarry does not claim, however, that he was harmed in any way by those conditions, or that any mental health professional was aware that the delay or lack of privacy created any risk of serious harm to Iryzarry's mental health, and disregarded that risk.  Accordingly, none of the claims regarding the timing and provision of mental health care prior to January 10, 2011, at the RCDC state a claim for inadequate mental health care, and those claims should be dismissed.

If anyone at the jail, however, caused Iryzarry's prescribed medications for his serious mental illnesses to be discontinued with an intention to cause him emotional distress and mental suffering, such allegations could state a claim under the Fourteenth Amendment for deliberate indifference to Iryzarry's serious mental health needs.  Such actions, as alleged, could constitute the type of unnecessary and wanton

infliction of pain, see Leavitt, 645 F.3d at 497, inflicted with the intent to punish Iryzarry, that would be sufficient to state a plausible claim for relief for a violation of the Eighth Amendment.

Iryzarry has not named the particular staff member responsible for this act, or specified what exactly occurred to cause the discontinuation of Iryzarry's medications. Accordingly, in an order issued simultaneously with this report and recommendation, the court will grant Iryzarry leave to amend his complaint to identify what individual or individuals are responsible for the alleged improper deprivation of Iryzarry's medication, and what each of those individuals did or failed to do that resulted in a violation of Iryzarry's right to adequate mental health care.

III. Medical Care

Iryzarry asserts that he has hepatitis C, a potentially life-threatening condition. Iryzarry states that he does not know how serious or severe his condition is, as he is unaware of his "liver status." Iryzarry states that he did not receive treatment or "follow up" for this condition. Iryzarry also complains that he did not receive physical therapy for a pinched

nerve in his neck, back, or hand, which has resulted in numbness in his hands.

As stated previously, to demonstrate that anyone at the RCDC was deliberately indifferent to his serious medical needs, Iryzarry must assert a serious medical condition in need of treatment, and he must also state facts to show that someone was aware of the severity of his condition, his need for treatment, the risk of harm that would accrue from the denial of treatment, and still denied treatment with the intention to cause him harm.

Iryzarry's claims for inadequate medical care fall far short of this mark. Iryarry states that he has a potentially serious medical condition, and a pinched nerve. "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Mun'y of Salem, 923 F.2d 203, 208 (1st Cir. 1990) (internal quotations and citation omitted). Iryzarry does not allege that he was in any imminent danger due to his Hepatitis C diagnosis, or that he was having symptoms as a result of the condition that required treatment. Further, Iryzarry has failed to state why his pinched nerve constituted a serious medical condition.

Even if Iryzarry had alleged that his medical conditions were serious, however, he has failed to state that anyone at the RCDC was even aware of these conditions, or their severity, much less that they deliberately denied him any necessary care. Accordingly, Iryzarry's claims alleging inadequate medical care should be dismissed from this action.

IV. Verbal Harassment

Iryzarry states that RCDC officers have been harassing him during his incarceration. Iryzarry's primary harassment claim alleges that CO Anderson, Lt. Horne, and other officers who are out to get him, have obtained Iryzarry's legal paperwork and newspaper articles concerning Iryzarry's involvement in criminal activity.[4] Based on information Iryzarry claims is contained therein, he states that Officers Anderson and Banville have been calling him a "PC" or a "rat" in an effort to disrespect and harass him. Iryzarry alleges generally that the desire to harass him also contributed to the other mistreatment received at the RCDC.

---

[4] Iryzarry has filed as an exhibit to the complaint a copy of a habeas petition he filed in state court. In that petition, Iryzarry asserts that Anderson told Iryzarry that he opened and read a piece of Iryzarry's legal mail. Iryzarry has not raised that issue in the narrative of his complaint, and the court will not construe the complaint to include such a claim. If Iryzarry intended to include a claim concerning his legal mail, he must move to amend his complaint to add that claim.

16

If true, the allegations in Iryzarry's complaint describe unprofessional and inappropriate behavior, consisting of verbal harassment by the officers. Such verbal harassment does not, however, violate any constitutional right. See Shabazz v. Cole, 69 F. Supp. 2d 177, 200-01 (D. Mass. 1999) (collecting cases) (without more, verbal harassment does not violate inmate's rights under the Fourteenth Amendment); cf. Skinner v. Cunningham, 430 F.3d 483, 489 (1st Cir. 2005) (harassment including slamming of inmate's cell door, threats, discourtesies, epithets, and false charges on petty matters do not violate Eighth Amendment). Accordingly, Iryzarry's claims alleging that he was verbally harassed by corrections officers should be dismissed.

V.  Grievance Procedures

Iryzarry alleges that two officers, Lt. Consentino and Sgt. Eldridge have failed to respond to his grievances, and that other officers have thrown away his request slips. Construing the complaint liberally, the court finds that Iryzarry alleges that he has suffered a deprivation of his First Amendment right to petition the government for a redress of grievances. There is no general constitutional right to prison grievance procedures. Freeman v. Dep't of Corrs., No. 11-1972, 2011 WL

4625712, *1 (3d Cir. Oct. 6, 2011). Thus, "the defendants' alleged obstruction or misapplication of [grievance] procedures is not independently actionable." Id. Accordingly, Iryzarry's claim alleging a denial of access to grievance procedures and the failure to respond to grievances should be dismissed.

VI. Claims Insufficiently Stated

Iryzarry makes fleeting reference to several claims for which he has failed to provide any factual basis or development. He alleges that he was denied access to a church or to Muslim services, that he was denied access to a law library to prepare for trial, and that he was subjected to racial profiling. Aside from asserting that RCDC officers conspired to violate his rights, Iryzarry has not stated what any particular defendant did or failed to do to cause a violation of his constitutional rights. Accordingly, the court finds that these claims are insufficiently stated and should not proceed, see Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" insufficient to state a claim), although in so recommending the court makes no comment on Iryzarry's ability to move to amend his complaint to add information sufficient to state claims for the harms alleged.

Similarly, Iryzarry has named the State of New Hampshrie and RCDC Superintendent Stephen Church as defendants to this action. No facts in the complaint mention either of these defendants, or indicate why either of them should be held liable for any constitutional violation. Accordingly, the State of New Hampshire and Church should be dismissed from this action.

**Conclusion**

As discussed herein, the court finds that Iryzarry has stated one claim upon which relief might be granted – that he was improperly denied mental health care beginning on January 10, 2011, when officers fabricated false reports in order to have Iryzarry's necessary medications discontinued, in order to cause him harm. In an order issued simultaneously with this report and recommendation, Iryzarry will be granted leave to amend that claim to name a proper defendant or defendants and to provide further factual support for his claim.

The court recommends that the remainder of Iryzarry's claims be dismissed, including: unduly restrictive conditions of confinement; improper classification; inadequate medical care; verbal harassment; interference with grievance procedures; denial of access to the courts; denial of access to religious services; racial profiling; and the denial of adequate mental

health care prior to January 10, 2011. Further, all of the presently named defendants should be dismissed from this action. These dismissals should be without prejudice to the claims or defendants being reinstated should Iryzarry adequately amend his complaint in this matter to sufficiently allege cognizable claims against any presently named defendant.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011) (citing United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008)); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).

                                      _____
                                       Landya B. McCafferty
                                       United States Magistrate Judge

Date: December 21, 2011

cc: Charles Iryzarry, pro se

LBM:jba